Joshua Trigsted
Oregon State Bar ID Number 06531
Trigsted Law Group, P.C.
5200 SW Meadows Rd, Ste 150
Lake Oswego, OR 97035
503-376-6774, ext. # 216
866-927-5826  facsimile
jtrigsted@attorneysforconsumers.com
Attorney for Plaintiff

UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| **AMY DALEY**, | |
| Plaintiff, | Case No. 09-cv-946-ST |
| vs. | |
| | **PLAINTIFF'S TRIAL MEMORANDUM** |
| **A & S COLLECTION ASSOCIATES, INC.**, | |
| Defendant | |

Plaintiff presents herewith a brief description of the relevant facts and law for the upcoming trial in this matter:

## I.    STATEMENT OF FACTS AND BACKGROUND

### A.    PROCEDURAL BACKGROUND

The violations of the FDCPA alleged by Plaintiff in her final Amended Complaint are as follows:

> a) Threatening to take an action against Plaintiff that cannot be legally taken or that was not actually intended to be taken, including threatening legal action if debt was not paid at 2 pm on June 23, 2009, and threatening to take legal action on a debt for which the applicable limitations period had expired (§ 1692e(5));

>   b) Communicating or threatening to communicate credit information which is known or which should be known to be false, including reporting a false date of delinquency to a credit reporting agency in an attempt to re-age Plaintiffs debt (§ 1692e(8));
>
>   c) Using unfair or unconscionable means against Plaintiff in connection with an attempt to collect a debt, including reporting a debt to a credit reporting agency after the 7 ½ year reporting period pursuant to the FCRA had expired (§ 1692f)); and
>
>   d) Using false representations and deceptive practices in connection with collection of an alleged debt from Plaintiff, including representing to Plaintiff on June 23, 2009, that Defendant had evidence that the debt did not arise in 1997, where Defendant had no such evidence (§ 1692e(10)).

Defendant's liability for allegation (b) has already been resolved by this court in Plaintiff's favor through Plaintiff's Motion for Summary Judgment. However, the question of the existence and/or extent of Defendant's liability for actual damages for violation (b) will be resolved at trial.

Another of the allegations listed above, allegation (c), was resolved in Defendant's favor through its Cross-Motion for Summary Judgment.

Violations (a) and (d), meanwhile, have not been disposed of in any way by this Court. The issue of Defendant's liability and, if Defendant is found liable, the extent of damages for those violations, is to be determined through trial.

**B.   STATEMENT OF FACTS RELEVANT TO PLAINTIFF'S ALLEGATION (B),** *SUPRA*

Firstly, with respect to this violation and all other violations at issue in this trial, certain threshold facts relevant to the question Defendant's liability under the FDCPA have already been resolved by implication, because this Court has already ruled in Plaintiff's favor on at least one claim, and these threshold facts are identical for all the alleged violations.  These facts include, but are not necessarily limited to the following: (1) Defendant is a "debt collector" as that term is defined by 15 U.S.C. § 1692a(6); (2) Plaintiff is a "consumer" as defined by the FDCPA, 15 U.S.C. § 1692a(3); (3) Defendant alleged collection activities were undertaken in connection with the collection of a "debt," as defined by 15 USC § 1692a(5); and (4) Defendant does not maintain procedures adequately designed to prevent violations of the FDCPA.  If any of these threshold facts remained genuinely at issue, Plaintiff presumably would not have succeeded in its Motion for Summary Judgment.  These threshold facts will not be mentioned in the remaining subsections.

As stated above, this Court has already granted Summary Judgment to Plaintiff on this claim.  The only issue remaining to be resolved with respect to this claim, therefore, is the issue of what damages ensued from the violation.

The first piece of evidence relevant to Plaintiff's damages for violation (b) is the email Plaintiff received from the Fico Scorewatch electronic service to which Plaintiff subscribes (the "Scorewatch Email").  (See "Scorewatch Email," Plaintiff's Exhibit 1).

The Scorewatch email states that a new entry had been added to Plaintiff's credit report, and states that Plaintiff's FICO score has been reduced by 41 points. Id. at page 1.

Plaintiff will testify at trial that the Scorewatch service is designed to send emails to Plaintiff that alert Plaintiff when a new entry appears on her credit, and that the Scorewatch Email was a typical example. Plaintiff will also testify that she is therefore certain that it was the unlawful credit report by Defendant that caused her credit score to drop 41 points. Plaintiff will testify as to the emotional pain and distress she experienced in learning that her credit score had been drastically reduced. Finally, Plaintiff will testify that her attempt to purchase a home was single-handedly thwarted by this drop in her credit score, and the emotional anguish that this caused her. This notion is further supported by Defendant's own collection notes, which reference Plaintiff's statement that she was attempting to buy a home. (See Defendant's Collection Notes, Plaintiff's Trial Exhibit 3, page 2).

### C. STATEMENT OF FACTS RELEVANT TO PLAINTIFF'S ALLEGATION (A), *SUPRA*

The debt Defendant was attempting to collect from Plaintiff was incurred in 1997. (See Order Granting in Part Plaintiff's Motion for Summary Judgment); (See also Defendant's Answers to Plaintiff's Requests to Admit, Plaintiff's Trial Exhibit 2, page 9). Plaintiff will testify that the debt was due at time of service and that Defendant could have taken legal action against Plaintiff beginning in 1997. Plaintiff will testify that Defendant threatened in a telephone conversation to take legal action against Plaintiff if her debt was not paid by 2:00 pm on June 23, 2009. Plaintiff will also testify that she

suffered actual damages due to the fear and emotional distress she experienced after this threat.

### D. STATEMENT OF FACTS RELEVANT TO PLAINTIFF'S ALLEGATION (D), *SUPRA*

Defendant's collection notes show that Plaintiff challenged Defendant about the age of the debt in a telephone conversation on June 23, 2009, and that Defendant's representative, who is represented by the three-letter acronym "BRE," told Plaintiff in response, "That's not what I see." (See Trial Exhibit 3, page 2). Plaintiff will provide testimony that Defendant did in fact make this false statement. Plaintiff will further testify as to the emotional damage she suffered as a result of Defendant's dishonesty and deception.

### II. THE FDCPA BROADLY PROHIBITS UNFAIR OR UNCONSCIONABLE COLLECTION METHODS, CONDUCT WHICH HARASSES, OPPRESSES OR ABUSES ANY DEBTOR, AND ANY FALSE, DECEPTIVE OR MISLEADING STATEMENTS, IN CONNECTION WITH THE COLLECTION OF A DEBT.

The Fair Debt Collection Practices Act ("FDCPA") is a comprehensive statute which prohibits a catalog of activities in connection with the collection of debts by third parties. *See* 15 U.S.C. §1692 et seq. The FDCPA imposes civil liability on any person or entity that violates its provisions, and establishes general standards of debt collector conduct, defines abuse, and provides for specific consumer rights. 15 U.S.C. §1692k. The operative provisions of the FDCPA declare certain rights to be provided to or claimed by debtors, forbid deceitful and misleading practices, both generally and in a

specific list of disapproved practices, and prohibit harassing and abusive tactics, both generally and in a specific list of disapproved practices.

In enacting the FDCPA, the United States Congress found that "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors," which "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. § 1692(a). Congress additionally found existing laws and procedures for redressing debt collection injuries to be inadequate to protect consumers. 15 U.S.C. § 1692(b). It is the express purpose of the FDCPA to "eliminate abusive debt collection practices by debt collectors, to insure that debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. § 1692(e).

Accordingly, the FDCPA broadly enumerates several practices considered contrary to its stated purpose, and forbids debt collectors from taking such action. The substantive heart of the FDCPA lies in three broad prohibitions. First, a "debt collector may not engage in any conduct the natural consequence of which is to harass, oppress, or abuse any person in connection with the collection of a debt." 15 U.S.C. § 1692d. Second, a "debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. And third, a "debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt." 15 U.S.C. § 1692f. Simply, designed to protect consumers from unscrupulous collectors, whether or not there exists a valid debt, the FDCPA broadly

prohibits unfair or unconscionable collection methods, conduct which harasses, oppresses or abuses any debtor, and any false, deceptive or misleading statements, in connection with the collection of a debt. *Baker v. G.C. Services Corp.*, 677 F. 2d 775 (9th Cir. 1982); *Heintz v. Jenkins*, 514 U.S. 291 (1995); *McCartney v. First City Bank*, 970 F.2d 45 (5th Cir. 1992).

### III. THE FDCPA IMPOSES A STRICT LIABILITY STANDARD.

The FDCPA is a strict liability statute. *Taylor v. Perrin, Landry, deLaunay & Durand,* 103 F.3d 1232 (5th Cir. 1997); *see also Irwin v. Mascott,* 112 F. Supp. 2d 937 (N.D. Cal. 2000); *Pittman v. J.J. Mac Intyre Co. of Nevada, Inc.,* 969 F. Supp. 609 (D. Nev.1997). "Because the Act imposes strict liability, a consumer need not show intentional conduct by the debt collector to be entitled to damages." *Russell v. Equifax A.R.S.*, 74 F. 3d 30 (2d Cir. 1996); *see also Gearing v. Check Brokerage Corp.,* 233 F.3d 469 (7th Cir. 2000) (holding unintentional misrepresentation of debt collector's legal status violated FDCPA); *Turner v. J.V.D.B. & Associates, Inc.,* 330 F. 3d 991, 995 (7th Cir. 2003) (holding unintentional misrepresentation that debtor was obligated to pay a debt discharged in bankruptcy violated the FDCPA); *Foti v. NCO Financial Systems, Inc.*, 424 F. Supp. 2d 643 (S.D. N.Y. 2006); *Clomon v. Jackson*, 988 F. 2d 1314 (2d Cir. 1993).

### IV. THE FDCPA MUST BE LIBERALLY CONSTRUED IN FAVOR OF CONSUMER-DEBTORS.

The FDCPA is a remedial statute, and therefore must be construed liberally in favor of the debtor. *Sprinkle v. SB&C Ltd*., 472 F. Supp. 2d 1235 (W.D. Wash. 2006).

The remedial nature of the FDCPA requires that courts interpret it liberally. *Clark v. Capital Credit & Collection Services, Inc.*, 460 F. 3d 1162 (9th Cir. 2006). "Because the FDCPA, like the Truth in Lending Act (TILA) 15 U.S.C §1601 et seq., is a remedial statute, it should be construed liberally in favor of the consumer." *Johnson v. Riddle*, 305 F. 3d 1107 (10th Cir. 2002); *see e.g. Plummer v. Gordon,* 193 F.Supp.2d 460, 463 (D.Conn.2002); *Ross v. Commercial Fin. Servs.,* 31 F.Supp.2d 1077, 1079 (N.D. Ill. 1999); *Harrison v. NBD, Inc.,* 968 F. Supp. 837 (E.D. N.Y.1997).

V.   **THE FDCPA IS TO BE INTERPRETED IN ACCORDANCE WITH THE LEAST SOPHISTICATED CONSUMER STANDARD.**

The FDCPA is to be interpreted in accordance with the "least sophisticated" or "unsophisticated" consumer standard. *See Jeter v. Credit Bureau, Inc*., 760 F.2d 1168 (11th Cir. 1985) (adopting the "least sophisticated" consumer standard); *Graziano v. Harrison*, 950 F. 2d 107 (3d Cir. 1991) (noting that statutory notice under FDCPA is to be interpreted from perspective of "least sophisticated debtor" standard); *Swanson v. Southern Oregon Credit Service, Inc*., 869 F.2d 1222 (9th Cir. 1988) (holding that provisions of the FDCPA are to be judged under the "least sophisticated debtor" standard); *Gammon v. GC Services Ltd. Partnership*, 27 F. 3d 1254 (7th Cir. 1994) (using the "unsophisticated consumer," rather than the "least sophisticated consumer," in order to protect consumers who are uninformed, naive or trusting, while admitting objective element of reasonableness). The least sophisticated consumer standard serves a dual purpose in that it ensures protection of all consumers, even naive and trusting, against deceptive debt collection practices, and protects debt collectors against liability for

bizarre or idiosyncratic interpretations of collection notices. *Clomon v. Jackson*, 988 F. 2d 1314 (2d Cir. 1993).

VI. **PLAINTIFF IS ENTITLED TO "ACTUAL DAMAGES" FOR EMOTIONAL DISTRESS BASED ON HER TESTIMONY ALONE; THE COURT SHOULD THEREFORE ALLOW PLAINTIFF TO GIVE SUCH TESTIMONY AND SHOULD CHARGE THE JURY TO CONSIDER SUCH TESTIMONY IN DECIDING WHETHER TO AWARD ACTUAL DAMAGES**

"Actual Damages" is not defined by the FDCPA itself. See 15 USC § 1692(a), *et seq.* Thus, it has been left to the courts to determine the availability of relief for various types of damages, and the corresponding proof requirements for each. In this role, courts have commonly allowed recovery of damages for emotional distress and relational injuries under the FDCPA. *See, e.g., Bingham v. Collection Bureau, Inc.,* 505 F.Supp. 864 (D.N.D. 1981) (awarding $1000 actual FDCPA damages to consumer for loss of happiness, interest in housework, and sleep and for nightmares, headaches, sensitive stomach, and crying spells, but no permanent ill effects); *Cady v. Marcella,* 49 Mass.App.Ct. 334 (2000) (hysterical crying and inability to concentrate on work); *Thomas v. National Bus. Assistants, Inc.,* Clearinghouse No. 37,542 (D.Conn. 1984) (awarding married debtors who received collection notices during period of marital strain, bankruptcy and pregnancy FDCPA damages of $200 each, although the only "permanent injury" was a strained marriage).

The Ninth Circuit has not yet decided whether a plaintiff must prove the elements of a claim for intentional infliction of emotional distress under state law in order to recover emotional distress damages, or whether those elements need not be proven so

long as plaintiff has tendered evidence substantiating that she suffered emotional distress as a result of the defendant's FDCPA violations. *Riley v. Giguiere*, 631 F.Supp.2d 1295, 1314-15 (E.D.Cal.2009). However, a very recent District Court decision, *Morisaki v. Davenport, Allen & Malone, Inc.,* recognized a trend towards allowing actual damages where any evidence has been presented, as opposed to demanding that Plaintiff's meet standards imposed traditionally by State Law causes of action such as Intentional Infliction of Emotional Distress. *Morisaki v. Davenport, Allen & Malone, Inc.,* Slip Copy*,* 2010 WL 3341566 (E.D.Cal.,2010). The *Morisaki* court's reasoning is worth quoting in detail:

> …The undersigned is persuaded by the line of cases finding that a plaintiff need only offer evidence that she suffered emotional distress as a result of the defendant's FDCPA violations in order to recover emotional distress damages. See *Riley*, 631 F.Supp. at 1315-16; *Panahiasl v. Gurney*, No. 04-04479, 2007 WL 738642, at (N.D.Cal. Mar.8, 2007). Such an approach appears to be particularly appropriate in the context of an unopposed motion for default judgment. See *Brablec v. Paul Coleman & Assocs., P.C.*, No. CIV S-08-1843 MCE GGH, 2010 WL 235062, at *2 (E.D.Cal. Jan.21, 2010) (Magistrate Judge Hollows finding it unnecessary to determine which standard should apply where the motion for default judgment was unopposed).
>
> …The amount plaintiff seeks for emotional distress damages, although high, is unopposed and appears to be warranted by the outrageous conduct described in plaintiff's complaint and declaration. See *Panahiasl*, 2007 WL 738642, at *2 (awarding to one plaintiff $50,000 in actual damages due to emotional distress arising from FDCPA violations that caused her to suffer embarrassment, fear, anger, panic, humiliation, nervousness, crying fits, difficulty eating and sleeping, and diarrhea); *Brablec*, 2010 WL 235062, at *2 (awarding a consumer $25,000 in actual damages due to emotional distress stemming from FDCPA violations). Cf. Hartung *v.*

> *J.D. Byrider, Inc.*, No. 1:08-cv-00960 AWI GSA, 2009 WL 1876690, at *9-10 (E.D.Cal. June 26, 2009) (finding defendant's actions egregious but recommending that plaintiff's request for $50,000 in actual damages for emotional distress be reduced to $25,000 because plaintiff was exposed to defendant's actions for a limited period of time). See also *Clodfelter v. United Processing, Inc.,* No. 08-CV-2131, 2008 WL 4225557, at (C.D.Ill. Sept.12, 2008) (granting an award of $100,000 in actual damages on a motion for default judgment against a debt collector with a long history of abusive and inherently degrading tactics where the debt collector called plaintiff, his family members, his employer, and numerous third-parties and threatened criminal prosecution for failure to pay a $400 debt that the plaintiff did not owe). The undersigned will recommend that the district court grant plaintiff's motion for default judgment and award damages in the amounts requested.

*Id.* at pp. 1-5. The actual damages awarded by the *Morisaki* court were based entirely on an affidavit submitted by Plaintiff with her application for default judgment. *Id.* at p. 4. The court in the recent case of *Kajbos v. Maximum Recover Solutions, Inc.*, also decided not to demand special proof requirements for actual damages and relied entirely on Plaintiff's testimony of emotional harm. *Kajbos v. Maximum Recover Solutions, Inc*. Slip Copy, 2010 WL 2035788 (D.Ariz.,2010).

Here, Plaintiff intends to testify with regard to the emotional damages she suffered as a result of Defendant's false threats and as a result of her inability for several months to obtain financing to purchase a home, which was caused by Defendant's unlawful credit reporting practices. The prevailing case law in the 9th Circuit and elsewhere supports giving Plaintiff an opportunity to present evidence for, and to allow a jury to hear evidence and determine the appropriate amount of, actual damages predicated on Plaintiff's emotional distress.

**VII. PLAINTIFF WILL SHOW THAT DEFENDANT VIOLATED THE FDCPA, § 1692e(5), BY MAKING A THREAT TO TAKE LEGAL ACTION THAT DEFENDANT DID NOT INTEND TO TAKE AND WHICH DEFENDANT COULD NOT TAKE**

Section 1692e of the FDCPA provides, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> … (5) The threat to take any action that cannot legally be taken or that is not intended to be taken.

The plain language of the statute is clear on its face and needs no explication. A collector may not make a threat to take an action that cannot legally be taken, and also cannot take an action that it does not actually intend to take. With regard to Defendant's lack of intent to take the threatened action, the only evidence Plaintiff has, and the only evidence needed, is Plaintiff's testimony that she has not been sued by Defendant or Defendant's client, Tom Jones Photography. With regard to the illegality of taking legal action against Plaintiff for the debt, however, it is necessary to explain the Oregon laws governing limitation of actions, as Plaintiff contends that it is the limitation of actions provisions in Oregon law that would prevent Defendant from taking the actions it threatened to take.

Because the contract for the debt was made in Oregon were taken in Oregon and Plaintiff has resided in Oregon at all times relevant to this inquiry, 15 USC § 1692i dictates that Oregon would be the only proper forum. 15 USC § 1692i.

ORS Chapter 12 governs limitations periods for causes of action in Oregon. ORS 12.010 states as follows:

> Actions shall only be commenced within the periods prescribed in this chapter, after the cause of action shall have accrued, except where a different limitation is prescribed by statute.

Plaintiff has already established through this litigation, specifically through her Motion for Summary Judgment, that the debt to Tom Jones Photography accrued at time of service in 1997. At the time the threat was made, on or about June 23, 2009, the debt was 12 years old. ORS 12.080 is the section of Chapter 12 most likely to apply to a potential action against Plaintiff for the debt. It provides, in relevant part:

> 12.080. Action on certain contracts or liabilities
>
> An action upon a contract or liability, express or implied, excepting those mentioned in ORS 12.070, 12.110 and 12.135 and except as otherwise provided in ORS 72.7250;…
>
> …shall be commenced within 6 years.

The limitations period on legal action against Plaintiff for the debt thus expired some time in 2003, 6 years after the action accrued in 1997. Defendant's client was therefore unable to take legal action against Plaintiff in 2009 and Defendant's threat to do so was a violation of the FDCPA.

Plaintiff's testimony is the only evidence in support of Plaintiff's contention that the threat was made. Plaintiff's testimony will also be the only evidence in support of a claim for actual damages based on the threat. Plaintiff will testify that the threat caused her great anxiety.

## VIII. PLAINTIFF WILL SHOW THAT DEFENDANT VIOLATED THE FDCPA, § 1692e(10), BY CLAIMING TO HAVE EVIDENCE THAT THE DEBT WAS NOT INCURRED IN 1997

Section 1692e of the FDCPA provides, in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> … (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

Defendant's collection notes show that on June 23, 2009, Plaintiff claimed told Defendant the debt was from 1997 and that Defendant's representative told Plaintiff "that's not what I see." (See Plaintiff's Trial Exhibit 3, page 1). This was clearly an irresponsible and false statement by Defendant, as the evidence already presented in this case makes it clear that the debt was in fact incurred in 1997. Plaintiff's testimony about this conversation will be consistent with Defendant's collection notes.

Evidence of actual damages for this violation will come from Plaintiff's testimony only.

Dated this 30th day of September, 2010.

By: /s/Joshua Trigsted
Joshua Trigsted
Trigsted Law Group, P.C.
5200 SW Meadows Rd, Ste 150
Lake Oswego, OR 97035
503-376-6774, ext. # 216
866-927-5826 facsimile
Attorney for Plaintiff