IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

AMY DALEY,

                Plaintiff,                        CV-09-946-ST

      v.                                       OPINION AND ORDER

A & S COLLECTION ASSOCIATES, INC.,

                Defendant.

STEWART, Magistrate Judge:

## INTRODUCTION

      After failing in her effort to resolve her dispute with defendant over reporting a stale debt on her credit report, plaintiff filed this case against defendant alleging, in part, violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 USC §§ 1692 *et seq*. Defendant responded with an Answer alleging affirmative defenses and counterclaims. Both parties filed written consents to allow a Magistrate Judge to enter final orders and judgment in this case in accordance with FRCP 73 and 28 USC § 636(c).

1 - OPINION AND ORDER

After exchanging discovery, plaintiff filed an Amended Complaint and a motion for partial summary judgment. Defendant also filed a motion for partial summary judgment and a motion for leave to amend its answer. This court granted summary judgment to plaintiff on her FDCPA § 1692e(8) claim and to defendant on the FDCPA § 1692f claim and otherwise denied the parties' motions. Defendant's counsel then withdrew, and this court notified defendant that it could not appear or act in the case except through an attorney. After defendant failed to file its pretrial submissions, plaintiff filed a motion to strike the jury trial and for entry of a default judgment. When defendant failed to appear at the pretrial conference, this court struck the jury trial and set an evidentiary hearing for plaintiff to present evidence to support entry of a default judgment. Defendant failed to appear at the evidentiary hearing and, based on plaintiff's evidence, this court entered the following order:

> The court previously granted summary judgment for plaintiff against defendant for violating 15 USC Sec.1692e(8). Based on the evidence received, the court found that defendant also violated 15 USC Sec. 1692e(10), but did not violate 15 USC Sec.1692e(5). The court also found that plaintiff is entitled to recover $1,000 statutory damages and $2,500 actual damages, for a total judgment of $3,500 plus her reasonable attorney fees and costs. After plaintiff submits her request for attorney fees and costs, the court will enter a judgment including the amount of attorney fees and costs awarded.

As the prevailing party under the FDCPA, plaintiff now has filed a Motion for Attorneys' Fees and Costs (docket #63), seeking an award of attorney fees in the sum of $25,863.50 and costs in the sum of $425.00. For the following reasons, that motion is granted in the reduced sum of $14,976.92 for attorney fees and $425.00 for costs.

///

///

I. **Attorney Fee Request**

The FDCPA contains a mandatory fee-shifting provision that awards a plaintiff "the costs of the action, together with a reasonable attorney's fee as determined by the court" against a debt collector. 15 USC § 1692k(a)(3). "The reason for mandatory fees is that congress chose a 'private attorney general' approach to assume enforcement of the FDCPA." *Camacho v. Bridgeport Financial, Inc.*, 523 F3d 973, 978 (9th Cir 2008), quoting *Tolentino v. Friedman*, 46 F3d 645, 651 (7th Cir 1995). FDCPA plaintiffs "seek to vindicate important . . . rights that cannot be valued solely in monetary terms . . . and congress has determined that the public as a whole has an interest in the vindication of statutory rights." *Tolentino*, 46 F3d at 652, quoting *City of Riverside v. Rivera*, 477 US 561, 571 (1986).

In FDCPA cases, "[d]istrict courts must calculate awards for attorneys' fees using the 'lodestar' method." *Ferland v. Conrad Credit Corp.*, 244 F3d 1145, 1149 n4 (9th Cir 2001) (citations omitted). "The 'lodestar' is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation by a reasonable hourly rate." *Morales v. City of San Rafael*, 96 F3d 359, 363. "Although in most cases, the lodestar figure is presumptively a reasonable fee award, the district court may, if circumstances warrant, adjust the lodestar to account for other factors which are not subsumed within it." *Ferland*, 244 F3d at 1149 n4 (citations omitted). The lodestar amount may be adjusted based on the following factors:

> (1) the time and labor required, (2) the novelty and difficulty of the questions involved, (3) the skill requisite to perform the legal service properly, (4) the preclusion of other employment by the attorney due to acceptance of the case, (5) the customary fee, (6) whether the fee is fixed or contingent, (7) time limitations imposed by the client or the

3 - OPINION AND ORDER

>circumstances, (8) the amount involved and the results obtained, (9) the experience, reputation, and ability of the attorneys, (10) the "undesirability" of the case, (11) the nature and length of the professional relationship with the client, and (12) awards in similar cases.

*Kerr v. Screen Extras Guild, Inc.*, 526 F2d 67, 70 (9th Cir 1975), *cert denied*, 425 US 951 (1976).

Factors one through five have been subsumed in the lodestar calculation. *See Morales*, 96 F3d at 364 n9. The sixth factor, whether the fee is fixed or contingent, may not be considered in the lodestar calculation. *Davis v. City & Cnty. of San Francisco*, 976 F2d 1536, 1549 (9th Cir 1992), *vacated in part on other grounds*, 984 F2d 345 (9th Cir1993).

Although defendant has filed no objection to plaintiff's motion for attorney fees, "the district court [is] required to independently review plaintiffs' fee request even absent defense objections." *Gates v. Deukmejian*, 987 F2d 1392, 1401 (9th Cir 1993); *Sealy, Inc. v. Easy Living, Inc.*, 743 F2d 1378, 1385 n3 (9th Cir 1984). The court must determine if plaintiff's fee request is reasonable and "does not abuse its discretion simply by reducing the amount of an unopposed fee award." *N.A.A.C.P. v. City of Evergreen, Ala.*, 812 F2d 1332, 1334 (11th Cir 1987). Uncontradicted evidence may be rejected if there is a reason for doing so. *Id*.

### A. Hourly Rates

Plaintiff seeks an award of attorneys fees in the amount of $25,863.50 based on a total of 120.8 hours of time expended by five attorneys, four paralegals, and one law clerk at hourly rates ranging from $100.00 per hour to $265.00 per hour. The bulk (75) of the hours were incurred by Joshua Trigsted, the sole attorney at Trigsted Law Group in Lake Oswego, Oregon. Trigsted Law Group is one of six law firms, including Weisberg & Meyers, LLC, in Florida, acting together as Attorneys for Consumers, "a nationwide team of consumer attorneys focusing on

consumer protection litigation."[1]  The other timekeepers all work outside Oregon, presumably at Weisberg & Meyers, LLC.

It is plaintiff's burden to prove that the requested hourly rates are close to the market rate of similar legal services in the community.  *Blum v. Stenson*, 465 US 886, 895 (1984).  "Affidavits of the plaintiffs' attorney and other attorneys regarding prevailing fees in the community, and rate determinations in other cases, particularly those setting a rate for the plaintiffs' attorney, are satisfactory evidence of the prevailing market rate."  *United Steelworkers of Am. v. Phelps Dodge Corp.*, 896 F2d 403, 407 (9th Cir 1990).

Generally, when determining a reasonable hourly rate, the relevant community is the forum in which the district court sits.  *Barjon v. Dalton*, 132 F3d 496, 500 (9th Cir 1997).  "[R]ates outside the forum may be used if local counsel was unavailable, either because they are unwilling or unable to perform because they lack the degree of experience, expertise, or specialization required to handle properly the case."  *Id* (citation and internal quotation marks omitted).  Therefore, the relevant community is the Portland Division of the District of Oregon.

To support the requested hourly rates, plaintiff has submitted affidavits from her five attorneys (Ex. M ), a 2007 Consumer Law Attorney Fee Survey (Ex. N), the *Laffey* matrix[2] (Ex. Q), and an affidavit from a consumer law attorney (Ex. O).  None of these submissions address the prevailing fees in the relevant community.

---

[1]  Available at http://www.attorneysforconsumers.com/aboutus.html.

[2]  This matrix is based on the hourly rates allowed by the District Court in *Laffey v. Northwest Airlines, Inc.*, 572 F Supp 354 (D DC 1983), *aff'd in part, rev'd in part on other grounds*, 746 F2d 4 (DC Cir 1984), *cert denied*, 472 US 1021 (1985).  The rates for subsequent years are determined by adding the change in the cost of living for the Washington, D.C. area to the applicable rate for the prior year, and then rounding to the nearest multiple of $5.00.

Each of the affidavits from plaintiff's five attorneys merely confirm that their time entries truly and accurately reflect the services they performed and that their hourly rates are reasonable, without providing any further detail. None of them professes to know the hourly rates charged by attorneys in the District of Oregon with comparable skill, experience and reputation. Similarly, the consumer law attorney states in his affidavit that he is an active attorney in Illinois who is admitted to practice in several state and federal courts in the midwest, but not in Oregon, and does not purport to offer an opinion as to the prevailing fee in the District of Oregon.

The *Laffey* matrix is equally unhelpful. It "is an inflation-adjusted grid of hourly rates for lawyers of varying levels of experience in Washington, D.C." *Prison Legal News v. Schwarzenegger*, 608 F3d 446, 454 (9th Cir 2010). According to the Ninth Circuit, "just because the *Laffey* matrix has been accepted in the District of Columbia does not mean that it is a sound basis for determining rates elsewhere, let alone in a legal market 3,000 miles away." *Id*.

Plaintiff also relies on the 2007 Consumer Law Attorney Fee Survey which shows that the average billing rate for firms with more than five attorneys in the Pacific Region is $350.00 per hour. That conclusion is far from persuasive. The Pacific Region includes not only Oregon, but also three other states (Alaska, Hawaii, and Washington) which likely skew the result for Oregon. In addition, the survey lists hourly rates based on years of practicing consumer law, but does not break those rates down by geographical region. As it cautions when interpreting its findings:

> An hourly rate is impacted by several factors, including years of practice, firm size, practice location, degree of practice concentration, reputation, advertising, personal client relationships, and other factors. As a result, the information presented here is for informational purposes only and may or

> may not be indicative of a particular attorney's reasonable hourly rate without further, more detailed analysis of the available and other data.

*Id* at 4

Regardless of all other factors, this survey lists the average hourly rate for the typical consumer law attorney as $307.00. *Id*. But it also describes that typical consumer law attorney as working in a small office of four or fewer practitioners, as practicing law for 15-16 years, and as employing 1.4 paralegals whose hourly billable rate is $93.25. *Id* at 5. That typical consumer law attorney does not describe any of plaintiff's attorneys.

Plaintiff also cites the March 2008 Oregon State Bar Consumer Law Section Hourly Rate Survey[3] to the effect that 53% of the respondents reported hourly rates between $200.00 and $299.00 for litigation. However, by not breaking down the hourly rates by years of experience, this conclusion is too broad to be particularly helpful here.

Although not cited by plaintiff, the "bellweather" of attorney rates used by this court is the Oregon State Bar 2007 Economic Survey ("OSB Survey").[4] *Atlantic Recording Corp. v. Anderson*, No. CV 05-933-AC, 2008 WL 2536834, at *14 (D Or June 24, 2008), quoting *McElmurry v. U.S. Bank Nat'l Ass'n*, No. CV 04-642-HA, 2008 WL 1925119, at *3 (D Or April 30, 2008). The OSB Survey does not list a specific rate for consumer law litigation, but does provide the average, median, 25th percentile, 75th percentile, and 95th percentile rates for lawyers in Portland in "Civil Litigation, Plaintiff (excludes Personal Injury)" and rates based on years of experience. This court uses the OSB Survey's "Hourly Billing Rate by Total Years

---

[3] Available at http://www.osbar.org/_docs/resources/HourlyRatesSurvey/ConsumerLaw/ConsumerLawReport.pdf.

[4] Available at http://www.osbar.org/docs/resources/07EconSurvey.pdf.

Admitted to Practice" chart to find a reasonable rate based on an attorney's years of practice, and does not award higher rates without some justification for doing so. *Id* at *15. Here, plaintiff provides no justification for deviating from the OSB Survey, and the court will therefore apply it in determining reasonable rates for her attorneys.

Starting with Mr. Trigsted, the information submitted reflects that he began working as an associate for a solo bankruptcy practitioner in 2006 and then was employed with Weisberg & Meyers, LLC, from 2007 to 2010, and presumably started the Trigsted Law Group in 2010. Therefore, he has been practicing law for a total of four years. He requests an hourly rate of $250.00. According to the OSB Survey, lawyers in Portland with 4-6 years of experience charge an average hourly rate of $188.00 and a median hourly rate of $185.00. The category of "Civil Litigation, Plaintiff (excludes Personal Injury)" lists higher hourly rates, although not broken down by years of experience, namely an average hourly rate of $240.00 and a median hourly rate of $225.00. Mr. Trigsted's requested rate of $250.00 would place him above the 95th percentile ($240.00) of Portland lawyers with 4-6 years experience and above both the average ($240.00) and median ($225.00) but below the 95th percentile ($294.00) for "Civil Litigation, Plaintiff (excludes Personal Injury)." Even accounting for any increase in the cost of living since 2007, Mr. Trigsted's requested rate exceeds those most applicable to him in the OSB Survey.

This court also notes that in a recent case, Mr. Trigsted billed 2.8 hours at $175.00 per hour which the court awarded. *Brown v. Phoenix Recovery Group*, No. 3:09-CF-1319-D (ND

Tex)[5] (Ex. K). When or why Mr. Trigsted suddenly jumped from billing $175.00 per hour within the last year to $250.00 per hour is not explained.

His requested rate is particularly troublesome for two other reasons. First, nearly all of his work was reviewed and corrected by one or two other attorneys at Weisberg & Meyers, LLC., yet they request less per hour ($175.00) that he did. Second, Susan Landgraf, the managing attorney for the Texas office of Weisberg & Meyers, LLC, who has been practicing law since 1992, billed and was awarded $250.00 per hour in *Brown* and $175.00 per hour in February 2009 by that same court in *Molinar v. Coleman*, No. 3:08-CV-1430-M, 2009 WL 435274 (ND Tex Feb 20, 2009) (Ex. K). Based on his far fewer years of experience, Mr. Trigsted's hourly rate should be much less than Ms. Landgraf's hourly rate. By any measure, Mr. Trigsted cannot justify his requested hourly rate of $250.00, and this court concludes that it should be reduced to $175.00.

Both Alex Weisberg, the Florida managing partner of Weisberg & Meyers, LLC, and Marshal Meyers, the managing partner of that same firm, request hourly rates of $265.00. Although the information submitted reflects that Mr. Weisberg has been practicing consumer protection litigation since 2000, the record is devoid of any information as to how long Mr. Meyers has been practicing law. In *Brown*, the court awarded an hourly rate of $265.00 to Mr. Meyers. Assuming that Mr. Meyers is comparable to Mr. Weisberg, then both have about 10 years of experience. According to the OSB Survey, lawyers in Portland with 10-12 years of experience bill an average hourly rate of $235.00 and a median hourly rate of $250.00. Based on

---

[5] The copy of the court's decision does not contain a date, but given that the case was filed in 2009, it presumably was issued in either 2009 or 2010.

that measure and any increase in the cost of living since 2007, $265.00 per hour requested by Messrs. Weisberg and Meyers is high, but not inherently unreasonable.

The other two attorneys, Aaron Radbil, a managing attorney with Weisberg & Meyers, LLC, and Dennis Kurz, a senior associate attorney at the same firm, request hourly rates of $175.00. Mr. Kurz graduated from law school in 2001, but this court has no information concerning Mr. Radbil's years of experience. But assuming that the two attorneys are comparable, their requested hourly rates are not inherently unreasonable based on the OSB Survey.

The four paralegals request $120.00 per hour, and the law clerk requests $100.00 per hour. However, plaintiff has submitted no information to support the reasonableness of these rates. This court has lowered applicants' requested paralegal rates where applicants have failed to provide evidence as to the paralegals' training and experience. *See eg. Sterling Savings Bank v. Sequoia Crossing, LLC*, No. 09-555-AC, 2010 WL 3210855, at *8 (D Or Aug 11, 2010) (reducing paralegal rate from $165 to $125); *Whitworth v. Nat'l Enter. Sys., Inc.*, No. CV 08-958-PK, 2010 WL 1924505, at *11 (D Or May 11, 2010) (reducing paralegal rate from $130 to $90); *Atlantic Recording Corp.*, 2008 WL 2536834, at *16 (reducing paralegal rate from $150 to $120); *Van Dyke v. BTS Container Serv.*, No. CV 08-561-KI, 2009 WL 2997105, at *2 (D Or Sept 15, 2009) (reducing unopposed paralegal fee from $125 to $100). Based on these cases and absent any evidence to the contrary, the paralegals' hourly rate of $120.00 is high, but not inherently unreasonable. Similarly, because it is less than the paralegals' hourly rate, this court has no basis to challenge the law clerk's hourly rate of $100.00.

///

### B. Number of Hours

In addition to determining the reasonable hourly rate, the court must also determine the number of hours reasonably expended on the litigation. "The fee applicant bears the burden of documenting the appropriate hours expended in the litigation and must submit evidence in support of those hours worked." *Welch v. Metro. Life Ins. Co.*, 480 F3d 942, 948 (9th Cir 2007). To satisfy that burden, plaintiff has submitted copies of billing records, showing itemized entries for each timekeeper with a specific description of the tasks performed, the billing rate and time billed to one-tenth of an hour increments (Ex. J).

#### 1. Duplicative Tasks

This court disallows time entries indicating that more than one lawyer performed the same task. *See Taylor v. Albina Cmty. Bank*, No. CV-00-1089-ST, 2002 WL 31973738, at *4-5 (D Or Oct 2, 2002). Specifically, this court has held that:

> A party is certainly free to hire and pay as many lawyers as it wishes, but cannot expect to shift the cost of any redundancies to its opponent. Instead it can only shift the reasonable attorney fee expended. A fee that is "not excessive" may still be unreasonable. When attorneys hold a telephone or personal conference, good "billing judgment" mandates that only one attorney should bill that conference to the client, not both attorneys. The same good "billing judgment" requires attorneys not to bill for more than two attorneys to review pleadings or to attend oral argument.

*Nat'l Warranty Ins. Co. v. Greenfield*, No. CV-97-1654-ST, 2001 WL 34045734, at *5 (D Or Feb 8, 2001).

Scrutiny of the time records submitted in support of plaintiff's fee petition reveals a number of such duplicative expenditures of time, as for example, conferrals or reports (usually by email) between Mr. Trigsted and the other four attorneys. Part of the problem seems to be the

11 - OPINION AND ORDER

involvement of so many attorneys, necessitating extra time reviewing the file and reporting to one another. Because it is always inappropriate to tax an opposing party with such duplicative expenditures of time, the following time entries (for the less senior attorney) are excluded from the lodestar calculation: Mr. Trigsted's time entries of 8/10/09 (.20), 11/11/09 (.10), 1/13/10 (.40), 1/14/10 (.40), 1/25/10 (.30), 2/10/10 (.30 & .20), 2/26/10 (.20), and 7/30/10 (.30); Mr. Meyers's 11/9/09 time entry (.10); Mr. Radbil's time entries of 11/10/09 (.20), 2/22/10 (.30), and 2/25/10 (.20); and Mr. Kurz's 2/19/10 time entry (.40).

### 2. Clerical Time

Both attorneys and paralegals engage in tasks that require a certain level of legal expertise, and hours spent on these tasks are reimbursable. *Atlantic Recording Corp*., 2008 WL 2536834, at *10. However, "[c]osts associated with clerical tasks are typically considered overhead expenses reflected in [an attorney's] hourly billing rate, and are not properly reimbursable." *Strand v. Automotive Machinists Pension Trust*, No. CV 06-1103-PK, 2007 WL 2029068, at *5 (D Or July 11, 2007) (citation omitted). Tasks considered clerical include, but are not limited to, filing motions with the court, filling out and printing documents, preparing affidavits and drafting certificates of service, organizing files, calendaring dates, rescheduling depositions, and sending documents. *Id*; *also see Frevach Land Co. v. Multnomah Cnty., Dep't of Envtl. Services*, No. CV-99-1295-HU, 2001 WL 34039133, at *12 (D Or Dec 18, 2001).

Here, plaintiff's attorneys made several time entries which consist of clerical tasks. Mr. Trigsted's time entries for March 1 and 2, 2010, are reduced by .40 (from .50 to .10) because all but the review of the court order are clerical tasks. In addition, Terri Trigsted's 2010 time entries for July 9 (.20) (file a firm address change), September 30 (3.50) ("prepare trial

12 - OPINION AND ORDER

documents per judge's order," presumably referring to form and not substance), September 30 (.20) (schedule meeting with client), October 13 (.20, .30 & .20) (print documents and set up times for discussions with the client), October 14 (.20) (set up time for discussion with client), October 18 (.20) (same), and October 19 (.20) (connect client to lawyer) are all clerical tasks and deducted.

### 3. Excessive Time

The fee petition also must be scrutinized "to [e]nsure that the time expended [in furtherance of each task performed] was not excessive to the task." *Taylor,* 2002 WL 31973738, at *5 ("A party is certainly free to pay its lawyers whatever it wishes, but cannot expect to shift the cost of any . . . excesses to its opponent. Instead it can only shift the reasonable attorney fee expended"). Although the number of hours is high, defendant mounted a vigorous and aggressive defense against plaintiff's claims, as it was entitled to do. The result was a relative increase in the hours expended by plaintiff's counsel in order to pursue their client's claims.

However, this court notes several instances of time clearly excessive to the task. Mr. Trigsted's time entry for 11/9/09 is reduced by .10 (from .30 to .20) for a single telephone call to the court. His time entry for 1/13/10 to compose joint ADR report is reduced by .20 (from .40 to .20) because that report is a simple check-off court form. His 5/11/10 and 6/14/10 time entries are each reduced by .10 (from .20 to .10) for handling simple emails. His 7/8/10 time entries are reduced by .20 (from .40 to .20) for reviewing and diarying a court order. And his 8/23/10 time entry is reduced by .20 (from .30 to .10) to leave a message. In addition, Mr. Meyer's 6/10/10 entry is reduced by .10 (from .20 to .10) for reviewing and diarying a court order.

### 4. Unsuccessful Claims

The hours also include substantial time to draft and file a partially unsuccessful motion for summary judgment. Where a plaintiff attains only partial success, the trial court must apply a two-part analysis. First, the court asks whether the claims upon which the plaintiff failed to prevail were related to the plaintiff's successful claims. If unrelated, the final fee award may not include time expended on the unsuccessful claims. *Hensley v. Eckerhart*, 461 US 424, 434-35 (1983). Related claims will involve "a common core of facts" or will be based on related legal theories, while unrelated claims will be "distinctly different," and based on different facts and legal theories. *Id*; *Thorne v. City of El Segundo*, 802 F2d 1131, 1141 (9th Cir 1986). If the unsuccessful and successful claims are related, then the court must apply the second part of the analysis, in which the court evaluates the "significance of the overall relief obtained by the plaintiff in relation to the hours reasonably expended on the litigation." *Hensley*, 461 US at 435. If the plaintiff obtained "excellent results," full compensation may be appropriate, but if only "partial or limited success" was obtained, full compensation may be excessive. *Id*.

Here, the unsuccessful claims clearly are related to the successful claims because they are premised on the same actions by defendant. Thus, the court must evaluate the extent of plaintiff's success. Because plaintiff recovered her statutory penalty plus actual damages, this court sees no need to reduce the time due to her lack of success on some of her claims.

### 5. Settlement Approach

Although plaintiff was successful, had her counsel been more reasonable in pursuing settlement, the cost of this litigation would have been substantially reduced. At best, upon prevailing, plaintiff could recover a statutory penalty of $1,000.00, actual damages, attorney fees

14 - OPINION AND ORDER

and costs. As was clear at the evidentiary hearing, plaintiff suffered little in the way of actual damages. Now she seeks attorney fees that are about seven times greater than the damages she recovered. This court recognizes that applying a rule of proportionality "would make it difficult, if not impossible, for individuals with meritorious [FDCPA] claims but relatively small potential damages to obtain redress from the courts." *City of Riverside v. Rivera*, 477 US 561, 578 (1992). (affirming fee award some seven times the amount of damages). However, the fee must still be reasonable considering the record as a whole.

     Before filing the Complaint, her counsel did contact defendant suggesting settlement, but without making any specific demand (Ex. A). Shortly after filing the Complaint, plaintiff's counsel made a "nonnegotiable" demand of $3,250.00 (Ex. B). That demand was more than the $1,000.00 statutory penalty and the approximate 100 hours expended by the lawyers and paralegals to that date. Had this demand been a starting point for negotiations, it would have been reasonable. However, by making it nonnegotiable, plaintiff forced defendant into a litigation defense mode. Plaintiff's counsel only exacerbated the situation by refusing defendant's suggestion to engage in ADR (Ex. C) because it is "often prejudicial to consumers" (Ex. D). That reason for refusing ADR is specious. Because mediation does not force any party to settle for any particular amount, it is not prejudicial to anyone. Had plaintiff's counsel agreed to ADR, this case likely could have been settled. Instead, plaintiff's counsel proceeded to engage in discovery.

     After several months, the billing records reveal an exchange of emails (which plaintiff has not submitted) concerning possible settlement. Defendant next made a settlement offer of

$1,500.00 (Ex. E) commensurate with the filing of the Joint ADR Report.[6] Plaintiff rejected defendant's offer and countered with a demand of $8,000.00 including attorney fees (Ex. F). Given the number of hours expended on discovery by then, that demand equated to plaintiff's best case scenario and was a good starting point for negotiations, assuming it was negotiable. The record does not reveal if it was negotiable or defendant's response.

The next settlement discussions occurred after the parties filed and the court ruled on the summary judgment motions. At that time, having prevailed as to liability on one claim, plaintiff demanded $20,000.00 including attorney fees and costs (Ex. G). Defendant rejected that demand, characterizing attorney fees of $19,000.00 for a $1,000.00 penalty case as unreasonable, and instead offered $2,000.00 (Ex. H). In response, plaintiff rejected any settlement conference "just so you can make an extra buck for attending it" and requested "a decent offer that gets a LOT closer to the $20k demand" (Ex. I). Needless to say, given plaintiff's intractable position, the case did not settle.

In sum, this case is an example of litigation gone amok because plaintiff's counsel did not engage in a good faith attempt to settle the case. Given the low amount of damages available to plaintiff if she prevailed, the only reasons to reject ADR at an early stage in the litigation were to increase the fees recoverable by plaintiff's attorneys and/or to punish the debt collector. Neither motive can be condoned by this court. Of course, plaintiff's counsel is not entirely to blame since defendant failed to make a reasonable offer after plaintiff unreasonably rejected ADR. Therefore, this court is not inclined to exclude all fees expended by plaintiff after rejecting ADR,

---

[6] Oddly, that report stated that counsel had not held settlement discussions with their clients and the opposing party and that ADR may be helpful at a later date following completion of discovery.

but concludes that a sizeable portion must be excluded as being far in excess of those needed to obtain the results obtained. Accordingly, the total attorney fee award is reduced by 20%.

### 6. **Conclusion**

Thus, plaintiff is entitled to recover the following as her reasonable attorney fees incurred in this case:

| NAME | HOURS | RATE | TOTAL |
|---|---|---|---|
| **Alex Weisberg** | 0.7 | $ 265.00 | $   185.50 |
| **Marshall Meyers** | 4.8 - 0.2 = 4.6 | 265.00 | 1,219.00 |
| **Joshua Trigsted** | 75.0 - 3.7 = 71.3 | 175.00 | 12,477.50 |
| **Aaron Radbil** | 10.5 - 0.7 = 9.8 | 175.00 | 1,715.00 |
| **Dennis Kurz** | 7.5. - 0.4 = 7.1 | 175.00 | 1,242.50 |
| **Kimberley Larson** | 0.4 | 120.00 | 48.00 |
| **Tremain Davis** | 6.6 | 120.00 | 792.00 |
| **Jessica DeCandia** | 0.2 | 120.00 | 24.00 |
| **Terri Trigsted** | 6.6 - 5.2 = 1.4 | 120.00 | 168.00 |
| **Joe Panvini** | 8.5 | 100.00 | 850.00 |
| SUBTOTAL | | | $ 18,721.15 |
| **Less 20%** | | | 3,744.23 |
| TOTAL | | | $ 14,976.92 |

17 - OPINION AND ORDER

## II. Costs

Expenses which may be taxed as costs against the losing part are enumerated in 28 USC § 1920 and include the docket fees and service of process fees.  Although a district court has broad discretionary power to allow or disallow a prevailing party to recoup the costs of litigation, the court may not tax costs beyond those authorized by 28 USC § 1920.  *Crawford Fitting Co. v. J.T. Gibbons, Inc.*, 482 US 437, 441-42 (1987).

Plaintiff has submitted a Bill of Costs for $425.00, consisting of $350.00 for the filing fee and $75.00 for the service fee.  Both of these costs are clearly recoverable from defendant.

## ORDER

For the reasons set forth above, plaintiff's Motion for Attorney Fees and Costs (docket #63) is GRANTED in the reduced sum of $14,976.92 and the Bill of Costs (docket #65) is GRANTED in the sum of $425.00.

DATED this 10th day of December, 2010.

                                                s/ Janice M. Stewart_____
                                              Janice M. Stewart
                                              United States Magistrate Judge